KASEN & KASEN, P.C.
Attorneys for Buddy Warren, Inc.
25 Broadway
9th Floor
New York, New York 10004
(646) 397-6226
mkasen@kasenlaw.com
Michael J. Kasen

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | X | |
| | X | |
| **In re:** | X | **Chapter 11 (Small Business)** |
| | X | |
| **BUDDY WARREN, INC.,** | X | **Case No. 17-11364-SHL** |
| | X | |
| **Debtor.** | X | |
| | X | |
| | X | |

### SMALL BUSINESS DEBTOR'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT

This Combined Plan of Reorganization and Disclosure Statement is presented to you to inform you of the proposed Plan and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN. IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY ___ March 5, 2018 ___ .**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY March 5, 2018 . THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: MICHAEL J. KASEN, ESQUIRE, KASEN & KASEN, 25 BROADWAY, 9TH FLOOR, NEW YORK, NEW YORK 10004.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR** March **12 , 2018 IN COURTROOM No. 701 AT THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, ONE BOWLING GREEN, NEW YORK, NEW YORK 10004.** at 11:00 am.

Your rights may be affected by this Combined Plan of reorganization and Disclosure Statement. You should consider discussing this document with an attorney.

Dated: February 5, 2018

Michael J. Kasen, Esquire
Kasen & Kasen
25 Broadway
9th Floor
New York, NY 10004
Telephone: (646) 397-6226
Fax: (646) 786-3611
Email: mkasen@kasenlaw.com

# TABLE OF CONTENTS

SUMMARY OF THE PLAN AND DISTRIBUTION TO CREDITORS ..................................1

ARTICLE 1 – BACKGROUND OF THE DEBTOR ................................................2

  1.1   Filing of the Debtor's Chapter 11 Case ..............................................2

  1.2   Nature of the Debtor's Business ........................................................2

  1.3   Legal Structure and Ownership ........................................................2

  1.4   Debtor's Assets ....................................................................................2

  1.5   Debtor's Liabilities ..............................................................................2

  1.6   Current and Historical Financial Conditions ..................................3

  1.7   Events Leading to the Filing of the Bankruptcy Case ..................3

  1.8   Significant Events During the Bankruptcy Case ............................4

  1.9   Projected Recovery of Avoidable Transfers ..................................6

ARTICLE 2 – THE PLAN ....................................................................................6

  2.1   Unclassified Claims ............................................................................7

      A.     Administrative Expenses ..........................................7

      B.     Priority Tax Claims ..................................................9

  2.2   Classes of Claims and Equity Interests ........................................10

      A.     Classes of Secured Claims ....................................10

      B.     Classes of Priority Unsecured Claims ................11

      C.     Classes of General Unsecured Claims ................11

      D.     Classes of Equity Interest Holders ......................12

  2.3   Claims Objections ............................................................................12

  2.4   Treatment of Executory Contracts and Unexpired Leases ........13

  2.5   Means for Implementation of the Plan ..........................................13

  2.6   Disbursing Agent ..............................................................................14

  2.7   Post-Confirmation Management ....................................................14

  2.8   Tax Consequences of the Plan ......................................................14

  2.9   Risk Factors/Mitigating Factors ....................................................15

ARTICLE 3 – FEASIBILITY OF PLAN ................................................................15

3.1   Ability to Initially Fund Plan ................................................................15

3.2   Ability to Make Future Plan Payments and Operate Without Further
      Reorganization ................................................................................15

ARTICLE 4 – LIQUIDATION VALUATION ................................................................15

ARTICLE 5 – DISCHARGE ................................................................................16

5.1   Discharge ................................................................................16

ARTICLE 6 – GENERAL PROVISIONS ................................................................16

6.1   Title to Assets................................................................................16

6.2   Binding Effect ................................................................................17

6.3   Serverability ................................................................................17

6.4   Retention of Jurisdiction by the Bankruptcy Court................................17

6.5   Captions ................................................................................18

6.6   Modification of Plan ................................................................................18

6.7   Final Decree................................................................................18

ARTICLE 7 – FREQUENTLY ASKED QUESTIONS ................................................18

ARTICLE 8 – DEFINITIONS................................................................................20

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The source of the funding for the Plan is the proceeds of the fee the Debtor received from the assignment of the non-residential real property lease of 171 Chrystie Street, New York, New York 10002.

Secured Claims:  No secured claims exist.

Priority Claims:  A Proof of Claim alleging a right to priority for an unliquidated claim for unemployment insurance was filed by the New York State Department of Labor. An objection to this claim has been filed. The Internal Revenue Service has filed a Proof of Claim alleging a right to priority under section 507(a)(8) of the Bankruptcy Code for interest on assessed taxes for the tax years 2013, 2014 and 2015 in the amount of $62.48. An objection to this claim has been filed. If these claims are allowed as a priority claim and liquidated prior to confirmation, the Plan provides to pay one hundred percent of the allowed priority claims within seven days from the date of confirmation.

Administrative Claims of Professionals:  It is estimated that administrative claims to pay for fees and expenses of counsel for the debtor total approximately $59,993.00[1]. The Plan provides for payment in full on the effective date of the Plan.

Unsecured Creditors:  Allowed unsecured creditors are to receive ten percent of the allowed amount of their claims payable on the effective date of the Plan. Creditors of this class will share distributions on a pro rata basis.

---

[1] Kasen & Kasen has requested fees of $43,050.00 plus reimbursement of expenses in the amount of $1,943.00 by way of its First Interim Fee Application. Kasen & Kasen anticipates it will seek approval of an additional $15,000.00 in a final fee application.

# ARTICLE 1
## BACKGROUND OF THE DEBTOR

**1.1.**    **Filing of the Debtor's Chapter 11 Case.**

On May 17, 2017, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court for the Southern District of New York in Manhattan.

**1.2.**    **Nature of the Debtor's Business.**

The Debtor leased space that was used as an art gallery and coffee shop.

**1.3.**    **Legal Structure and Ownership.**

The Debtor, Buddy Warren, Inc., is a corporation formed in the State of New York on January 18, 2013.

**1.4.**    **Debtor's Assets.**

The Debtor owns no real estate. The personal property owned by the Debtor are the same as were listed on Schedule A/B valued at $5,178.21 and the proceeds of the Assignment of the Lease totaling $387,000.00.

**1.5.**    **Debtor's Liabilities.**

Five creditors have filed Proofs of Claims in this case.

The New York State Department of Labor filed a Proof of Claim allegedly entitled to priority for an unknown amount. The Debtor has objected to this claim and anticipates this claim will not be allowed.

BEH Corp., the Debtor's prior landlord, filed a Proof of Claim in the amount of $44,095.12 representing pre-petition rent. All claims of BEH Corp. have already been settled and

2

paid in connection with the Order Approving the Assumption of the Lease and Fixing the Cure Amount. The Debtor has no further liability to BEH Corp.

The Internal Revenue Service has filed a Proof of Claim alleging a total liability of $6,754.96 of which, $62.48 is allegedly due priority status. The Debtor has objected to this claim and anticipates this claim will not be allowed.

New York City Department of Finance filed a Proof of Claim alleging a liability of $84,168.07. The Debtor filed an objection to this claim and the claim was withdrawn by the New York City Department of Finance. No further liability to this creditor exists.

M. Robin Krasny filed a claim for an unsecured debt in the amount of $175,000.00.

## 1.6.    **Current and Historical Financial Conditions.**

The Debtor commenced business activity in February 2013. In calendar year 2013, the Debtor had gross income of $57,198.00.  In calendar year 2014 the Debtor had gross income of $156,995.00. In calendar year 2015 the Debtor had gross income of $17,947.00 In calendar year 2016 the Debtor had gross income of $37,865.76. In calendar year 2017 to the date of the filing of the Petition, May 17, 2017, the debtor had no income.  Since the date of the filing through January 31, 2018, the Debtor has had gross income of $41,597.90 excluding the assignment of the lease which produced net proceeds to the Debtor of $387,000.00. Since the assignment of the lease the Debtor has not generated any income.

## 1.7.    **Events Leading to the Filing of the Bankruptcy Case.**

The Debtor's downturn began with a dispute with its landlord, BEH Corp. BEH Corp. leased the space at 171 Chrystie Street to the Debtor in February 2013. The Debtor expended significant sums of money to build out the space to its requirements and ultimately encountered difficulty related to providing heat to the space. BEH Corp. refused to cooperate in installing

3

utility conduits and lines that would enable heat to be provided to the leased premises. Without a heat source, the Debtor's planned coffee bar/art gallery was not able to attract the traffic necessary for it to operate successfully. This dispute resulted in the Debtor filing suit in January 2015 against BEH Corp. in the Supreme Court of New York, New York County (Index No. 650169/2015).

Ultimately, and while the suit was still pending, the Debtor defaulted on its rent obligations to BEH Corp. and was facing an imminent eviction when this Chapter 11 Case was filed.

## 1.8.    Significant Events During the Bankruptcy Case.

### A.  Employment of Professionals

The Debtor's sought approval of the retention of two professionals, Kasen & Kasen, P.C. as attorneys for the Debtor and Capstone Realty as real estate agent for the Debtor.

The Application to Employ Kasen & Kasen, P.C. as the Attorneys for the Debtor was filed on May 18, 2017 (CM/ECF No. 3) and an Order Approving the Retention of Kasen & Kasen, P.C. as Attorneys for the Debtor was entered on June 28, 2017 (CM/ECF No. 13).

The Application to Employ Capstone Realty was filed on July 11, 2017 (CM/ECF No. 15) and an Order Approving the Employment of Capstone Realty was entered on August 8, 2017 (CM/ECF No. 22).

### B.  Assignment of Lease

Beginning almost immediately upon the filing of the Chapter 11 Case, the Debtor began seeking a subtenant or assignee for the lease that would result in enough money to cure any defaults the Debtor had with its landlord. Several parties were identified by the Debtor and

4

negotiations commenced. Additionally, the Debtor engaged the services of Capstone Realty[2] to assist in locating potential sub-tenants.

By the middle of August, the Debtor engaged in negotiations with a developer that was interested in acquiring the lease of 171 Chrystie Street, New York, New York to use the space as a sales office for various projects. On August 16, 2017 an agreement to assign the lease was reached in principle that would result in a payment of $475,000.00 to the Debtor. Negotiations and drafting ensued immediately, but due to the time restrictions imposed by 11 U.S.C. § 365(d)(4), and not yet having reached a fully executed assignment agreement, the Debtor filed a Motion to Extend Time to Assume or Reject the Lease on August 29, 2017 (CM/ECF No. 24). BEH Corp. filed an Objection to the Motion to Extend time to Assume or Reject the Lease on September 6, 2017 (CM/ECF No. 26) and a hearing was held on September 13, 2017. An Order Granting Extension of Time to Assume or Reject Unexpired Lease of Non-Residential Real Property was entered on September 15, 2017 (CM/ECF No. 27).

An Assignment of Commercial Real Property Lease Agreement between the Debtor and 171 Chrystie Tenant LP was executed and on October 3, 2017 the Debtor filed a Motion to Assume and Assign the Lease of the Non-Residential Real Property Located at 171 Chrystie Street (CM/ECF No. 28). A limited objection to the Motion to Assume and Assign was filed by BEH Corp. (CM/ECF No. 31) based primarily on the amount of a cure payment that was due BEH Corp. The Debtor and BEH Corp. negotiated a settlement that resulted in payment of $88,000.00 to BEH Corp. prior to the hearing on the Motion to Assume and Assign the Lease. On November 1, 2017 an Order (1) Approving the Assumption of the Unexpired Lease of Non-Residential Real Property Located at 171 Chrystie Street, New York, New York; (2) Approving

---

[2] Capstone Realty was ultimately not able to locate any suitable subtenants or assignees.

the Assignment of Such Lease to 171 Chrystie Tennant LP; and (3) Fixing the Cure Amount

Owed to BEH Corp. (CM/ECF No. 32) was entered.

The Debtor has since received the payment from the Assignee[3], BEH Corp. has received

full payment of the Cure Amount and the Debtor has vacated the leased premises and hasn't

conducted business since.

### 1.9. Projected Recovery of Avoidable Transfers

After careful investigation into the Debtor's books and records the Debtor, in its best

business judgment has determined that there are no preferences, fraudulent conveyances or other

avoidance actions to pursue and as such there are no projected recoveries from such actions.


### ARTICLE 2
### THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are

entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose

of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes

and describes the treatment each class will receive. The Plan also states whether each class of

Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired

if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise

entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in

the Plan.

---

[3] This money is being held by Kasen & Kasen, P.C. in trust.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1.    **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | -0- The debtor did incur any debt after the petition date | None. |
| Administrative Tax Claim | -0- There are no administrative tax claims | None. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | -0- There are no goods received in the ordinary course of business within 20 days before the Petition Date | None. |
| Professional fees, as approved by the Bankruptcy Court | Kasen & Kasen | Paid in full on the Effective Date, or according to separate written agreement, |

| | $59,993.00[4] | or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date. |
|---|---|---|
| Clerk's Office fees | -0- | Paid in full on the Effective Date. |
| Other Administrative Expenses – allowed administrative expenses to landlord | -0-<br>The landlord has received any administrative expenses owed it by the Debtor pursuant to Order Approving Assignment of Lease and Fixing Cure Amount | None |
| United States Trustee Fees[5] | To be determined by the United States Trustee | Paid in full on the Effective Date. |
| **TOTAL** | $ | |

B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes

described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim

agrees otherwise, it must receive the present value of such Claim, in regular installments paid

over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Treatment |
|---|---|---|
| New York State Department of Labor and the Internal | -0- | The Debtor has objected to these claims and believes these taxing |

---

[4] Kasen & Kasen has requested fees of $43,050.00 plus reimbursement of expenses in the amount of $1,943.00 by way of its First Interim Fee Application. Kasen & Kasen anticipates it will seek approval of an additional $15,000.00 in a final fee application.

[5] All fees required to be paid by 28 U.S.C. §1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

| | | |
|---|---|---|
| Revenue Service have made claims that include at least some alleged priority status. These claims have been objected to, but no determination as to the status of these claims have yet been made by the Court. | | authorities are not entitled to any distribution. If a contrary determination is made by the Court, these claimants will be paid 100% of their allowed priority claims on the effective date of the Plan. |

**2.2**    **Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

      A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| N/A. The debtor has no allowed secured claims. | | | | |

B.  Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the

Code are required to be placed in classes. The Code requires that each holder of such a Claim

receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim.

However, a class of holders of such Claims may vote to accept different treatment.

No priority claims other than the disputed claims detailed in Section 2.1B above exist.

C.  Class of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to

priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 1, which contains

general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | Allowed unsecured claims | Impaired | Creditors of this class will be paid 10% of the allowed amount of their claims as follows: 10% of the allowed general unsecured claim in full on the effective date of the plan. In the event a dispute as to the allowed amount of the claim exists on the effective date of the plan, funds sufficient to pay 10% of the claimed amount will remain in Kasen & Kasen, P.C.'s trust account until such disputes are settled by order of the Court and a distribution of 10% of the allowed amount will be made within seven days of such court order. |

D. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, the Equity Interest holders are the shareholders.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders.

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | Equity Interest holders. Buddy Schussel is the sole equity interest holder. | Impaired | On the effective date of the Plan, any funds held by Kasen & Kasen, P.C. above the funds necessary for distributions and holdbacks as indicated above will be returned to the reorganized Debtor. Within 90 days of the effective date, any funds that were held back to satisfy disputed claims that had not yet been adjudicated, will be returned to the reorganized Debtor. Buddy Schussel shall retain 100% ownership interest in the reorganized Debtor. |

## 2.3. <u>Claims Objections.</u>

The Debtor has objected to Claim Number 1 filed by the New York State Department of Labor, Claim Number 3 filed by the Internal Revenue Service and Claim Number 4 filed by the New York City Department of Finance.

In response to the objection to Claim Number 4, New York City Department of Finance withdrew its claim.

No response to the Objections to Claim Numbers 1 or 3 were received and a hearing on these objections was held on January 10, 2018. At that hearing the Court asked that the

12

objections be supplemented and an additional hearing be set. Once the Debtor receives back an

affidavit from its pre-petition accountant a supplemented objection to these claims will be filed

and noticed for hearing.

The only remaining claim is that of M. Robin Krasny. The Debtor does not anticipate

objecting to this claim.

## 2.4.   Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains

for both the Debtor and another party to the contract. The Debtor has the right to reject, assume

(i.e. accept), or assume and assign these types of contracts to another party, subject to the

Bankruptcy Court's approval.

The Debtor has already assumed and assigned its only executory contract or unexpired

lease as explained in more detail in Section 1.8 B above.

## 2.5.   Means for Implementation of the Plan.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible,

including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and

clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The

Debtor expects to have sufficient cash on hand (currently being held in trust by Kasen & Kasen,

P.C.) to make the payments required on the Effective Date.

As provided in Paragraph 2.1 of this Combined Plan and Disclosure Statement, all United

States Trustee Fees accrued prior to the Effective Date shall be paid in full, on or before the

Effective Date, by the Debtor or any successor to the Debtor. All United States Trustee Fees

which accrue post-Effective Date shall be paid in full on a timely basis by the Debtor or any

successor to the Debtor prior to the Debtor's case being closed, converted or dismissed.

The money to fund the Plan was derived from the assignment fee the Debtor received as a result of the Assignment of Commercial Real Property Lease Agreement entered into between the Debtor and 171 Chrystie Tenant LP and approved by the Order Pursuant to 11 U.S.C. § 365(a) and (f) (1) Approving the Assumption of the Unexpired Lease of Nonresidential Real Property Located at 171 Chrystie Street, New York, New York; (2) Approving the Assignment of Such Lease to 171 Chrystie Tenant LP; and (3) Fixing the Cure Amount Owed to BEH Corp. and Denying Certain Other Motions As Moot. The Debtor received an assignment fee of $387,000.00, all of which is held in trust by Kasen & Kasen, P.C.

**2.6.    Disbursing Agent.**

Distributions to Creditors provided for in this Plan will be made by Kasen & Kasen, P.C..

**2.7.    Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Buddy Schussel | President | At the discretion of the Debtor |

**2.8.    Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan: (1) Tax consequences to the Debtor of the Plan - none; (2) General tax consequences on Creditors of any discharge– to the extent that an unsecured creditor is not being paid in full, the creditor may have to write off the amount not being paid as a bad debt;  and (3) the general tax consequences of receipt of Plan

consideration after Confirmation – any monies received by a creditor after confirmation may

have to be considered as income by the creditor, and that income may be taxed accordingly.

**2.9.** **Risk Factors/Mitigating Factors.**

There are no risks to completion of the Plan, since all anticipated distributions

contemplated by the Plan are being made from funds on hand and are being made on the

effective date of the Plan.

**ARTICLE 3**
**FEASIBILITY OF PLAN**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed

by the liquidation, or the need for further financial reorganization, of the Debtor or any successor

to the Debtor, unless such liquidation or reorganization is proposed in the Plan. Since liquidation

is proposed in the Plan, the Court should make the appropriate finding that confirmation of the

Plan is not likely to be followed by a second liquidation.

**3.1.** **Ability to Initially Fund Plan.**

The Plan Proponent believes that the Debtor will have enough cash on hand on the

Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that

date. Since the debtor will have on hand at least $387,000.00 from the net proceeds of the

assignment fee, there should be enough funds on hand to fund the Plan on the effective date.

**3.2.** **Ability to Make Future Plan Payments And Operate Without Further**
**Reorganization.**

The Plan does not contemplate any payments after the effective date of the Plan.

**ARTICLE 4**
**LIQUIDATION VALUATION.**

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity

Interest holders who do not accept the Plan will receive at least as much under the Plan as such

15

Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. The only significant asset of the Debtor is the sum of $387,000.00 which is the net proceeds of the assignment of the lease thus if the Debtor were liquidated under Chapter 7, Chapter 7 administrative expenses and Chapter 11 administrative expenses would have to be paid in full and the balance of the funds would be available for distribution to the general unsecured creditors prior to distribution to the equity security holder. It is anticipated that the one valid impaired unsecured creditor will accept the treatment provided for by the Plan and therefore the Plan will be consensual. Should any creditors wish to review a liquidation analysis, one will be provided upon request.

## ARTICLE 5
## DISCHARGE.

**5.1.**    **Discharge.**

On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

## ARTICLE 6
## GENERAL PROVISIONS.

**6.1.**    **Title to Assets.**

Except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after

confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

### 6.2.    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1127; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5.**   **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6.**   **Modification of Plan.**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Bankruptcy Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.**   **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor, Buddy Warren, Inc., Attempting to Do in Chapter 11?**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**If the Plan of Reorganization Is the Document That Governs How a Claim Will Be Treated, Why Am I Receiving This Combined Plan and Disclosure Statement?**

In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Combined Plan and Disclosure Statement. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**

To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?**

Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?**

Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements regarding the ultimate fairness of the Plan to the creditors are shown.

**Am I Entitled to Vote on the Plan?**

Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?**

Sections 2.2. of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?**

The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____. Ballots should be mailed to the following address:       Michael J. Kasen, Esquire, Kasen & Kasen, 25 Broadway, 9th Floor, New York, New York 10004.

**How Do I Determine When and How Much I Will Be Paid?**

In Sections 2.1.A, 2.1.B, 2.2.A, 2.2.B and 2.2.C, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

**ARTICLE 8**
**DEFINITIONS**

**8.1.**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**8.2.**     **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**8.3.**     **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**8.4.**     **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**8.5.**     **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**8.6.**     **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**8.7.    Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.8.    Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**8.9.    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.10.    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**8.11.    Bankruptcy Court**: The United States Bankruptcy Court for the Southern District of New York.

**8.12.    Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**8.13.    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**8.14.    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Buddy Warren, Inc. is the Debtor-in-Possession.

**8.15    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the
Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**8.16.    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**8.17.    Committee**: Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

**8.18.    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Combined Plan and Disclosure Statement.

**8.19.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or

consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**8.20.    Confirmation Hearing**: The hearing to be held on _____, 2018 to consider confirmation of the Plan.

**8.21.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**8.22.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**8.23.    Debtor** and **Debtor-in-Possession**: Buddy Warren, Inc., the debtor-in-possession in this Chapter 11 Case.

**8.24.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**8.25.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**8.26.    Effective Date**: The effective date shall be the date on which the order of confirmation becomes final.

**8.27.    Equity Interest**: An ownership interest in the Debtor.

**8.28.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**8.29.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**8.30.    IRC**: The Internal Revenue Code

**8.31.    Petition Date**:  May 17, 2017, the date the chapter 11 petition for relief was filed.

**8.32.    Plan**: This Combined Plan and Disclosure Statement, either in its present form or as it may be altered, amended, or modified from time to time.

**8.33.    Plan Proponent**: The individual or entity that has filed this Combined Plan and Disclosure Statement.

**8.34.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**8.35.    Reorganized Debtor**: The Debtor after the Effective Date.

**8.36.    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**8.37.    Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**8.38.    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Dated: New York, New York
        February 5, 2018

Respectfully submitted,

KASEN & KASEN, P.C.

By:    /s/ Michael J. Kasen
       Michael J. Kasen, Esq.
       Attorneys for the Debtor
       25 Broadway, 9th Floor
       New York, New York 10004
       (646) 397-6226
       mkasen@kasenlaw.com